IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LKRB INDUSTRIES, LLC *doing business as* HAPPY GRANDPA,

$\qquad$ *Plaintiff*,

v.

xuzhouaiyaxundianzishangwuyouxiangongsi, *et al*,

$\qquad$ *Defendants*.

Civil Action No. 2:24-cv-1601

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff LKRB Industries, LLC ("LKRB"), d/b/a Happy Grandpa ("HGP"), asks the Court to enter a preliminary injunction enjoining Defendants (identified in Schedule "A" of the Complaint for Damages and Injunctive Relief ("complaint") (ECF No. 3, pp. 23-24)) from manufacturing, distributing, importing, offering for sale, and/or selling LKRB's patented encapsulated flexible light emitting diode light strips ("LED light strips") associated with United States Patent Number 8,789,988 ("'988 Patent"). (ECF No. 3, pp. 2, 21). At Count I, LKRB asserts that Defendants directly and indirectly infringed, and continue to infringe, on at least independent Claim 1 of the '988 Patent in violation of 35 U.S.C. § 271. (*Id.* at 18-19). At Count II, LKRB asserts that Defendants violated the Lanham Act, 15 U.S.C. § 1125(a), by making "false and/or misleading descriptions of fact and/or false and/or misleading representations of fact about the nature, characteristics, and/or qualities of Defendants' Products." (*Id.* at 19-20). For the reasons explained below, the Court will grant the requested preliminary injunction with regard to Defendant Nos. 9, 13, 25-27, 33, and 87. The Court will deny LKRB's request for a preliminary

injunction with regard to Defendant Nos. 10, 15, 23, 31, 34, 36, 39, 41, 45, 49, 63, 70, 76, 77, 84, 88, and 92-94.

## I.    FACTUAL BACKGROUND

LKRB is a limited liability company that is the sole authorized manufacturer and seller of the product embodying the claims within the '988 Patent.  (ECF No. 3, p. 2).  The '988 Patent entitled "Flexible LED light strip for a bicycle and method of making the same" was issued by the United States Patent and Trademark Office on July 29, 2014.  (*Id.* at 3).  The '988 Patent was originally issued to Dan Goldwater.  (*Id.* at 3).  Patrick Buckley ("Buckley") obtained ownership of the '988 Patent on behalf his business, LKRB, in 2021.  (*Id.* at 5).  No license or other rights to the '988 Patent have been granted to any Defendant.  (*Id.*).  LKRB currently sells and offers for sale HGP's LED light strips on Amazon.com ("Amazon") and at www.HappyGrandpa.com.  (*Id.*)  These LED light strips allegedly embody the innovative features set forth in the claims of the '988 Patent.  (*Id.*).    According  to  the  complaint,  "Defendants  are  individuals,  partnerships, unincorporated associations, and/or business entities of unknown makeup . . . [who] operate in foreign jurisdictions and manufacture, distribute, import, offer for sale, and/or sell products, including Defendants' Products, from the same or similar sources in those foreign locations."  (*Id.* at 3).

Like LKRB, Defendants sell LED light strips.  Defendants allegedly sell and offer for sale infringing products through online marketplaces, including Amazon.  (*Id.* at 6).  LKRB alleges that Defendants' products are not only infringing, but likely to confuse consumers and erode confidence in the LED light strip industry as a whole.  (*Id.* at 9).  Moreover, LKRB alleges that Defendants have engaged in false marketing in violation of the Lanham Act, in part, regarding the specifications and safety of Defendants' products.  (*Id.* at 11-12).

On November 11, 2024, LKRB filed this lawsuit against Defendants for patent infringement and false marketing.  (ECF No. 3).  In their complaint and *ex parte* motion, LKRB requested (1) a temporary restraining order; (2) an order restraining Defendants' assets; (3) an order to show cause why a preliminary injunction should not issue; and (4) expedited discovery. (ECF Nos. 3, 4).  On November 25, 2024, the Court held a motion hearing and granted LKRB an *ex parte* temporary restraining order.  (ECF Nos. 12, 13).  In the complaint, LKRB also requested entry of a preliminary injunction that would bar Defendants from selling the allegedly infringing products during the pendency of this litigation.  (ECF No. 3).  The Court held hearings regarding the preliminary injunction on December 23, 2024, and January 8, 10, and 17, 2025.  (ECF Nos. 50, 98, 104, 138).  During these hearings, it became apparent that the most contested issue at this stage of the litigation is whether the allegedly infringing products include support tabs.  (ECF No. 115, p. 17).  LKRB asserts that the Defendants' products include support tabs – meaning that their products literally infringe on the '988 Patent.  Most Defendants argue that the lack of support tabs is the primary difference between their products and the '988 Patent.  Support tabs are used during the manufacturing of the patented LED light strips to connect and hold the strips together in a sheet before they are separated into individual strips.  (*Id.*).  The support tabs are not always visible to the naked eye and sometimes must be viewed through a microscope.  (*Id.* at 26).

## II.    STANDARD OF REVIEW

Utility patents are issued pursuant to 35 U.S.C. § 101, which provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof . . . ." 35 U.S.C. § 101.  The Patent Act enables federal courts to issue injunctive relief "to prevent the violation of any right secured by patent." 35 U.S.C. § 283. For patent infringement claims, the Court must apply the preliminary injunction standards set forth

by the United States Supreme Court and the United States Court of Appeals for the Federal Circuit. 28 U.S.C. § 1295(a)(1) ("The [Federal Circuit] shall have exclusive jurisdiction . . . of an appeal from a final decision of a district court of the United States . . . in any civil action arising under . . . any Act of Congress relating to patents.")

"The decision to grant or deny . . . injunctive relief is an act of equitable discretion by the district court." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also* 35 U.S.C. § 283 (generally providing that courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable"). Injunctive relief is "an extraordinary remedy never awarded as of right." *Wind Tower Trade Coalition v. United States*, 741 F.3d 89, 95 (Fed. Cir. 2014) (internal citations omitted). A party seeking a preliminary injunction must therefore demonstrate: (1) a reasonable likelihood of success on the merits; (2) the prospect of irreparable harm in the absence of an injunction; (3) that this harm would exceed harm to the opposing party; and (4) that the public interest favors such relief. *See, e.g., Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259 (Fed. Cir. 2012). In determining whether to grant injunctive relief, no one factor, taken individually, proves dispositive. *See Hybritech v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988). Rather, the Court "must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." *Id.* at 1451. Nevertheless, the Court will not grant an injunction unless the movant "establishes both of the first two factors, likelihood of success on the merits and irreparable harm." *PHG Tech., LLC v. St. John Cos., Inc.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006) (internal citations omitted).

In reaching its decision on a request for injunctive relief, a district court sits as both the trier of fact and the arbiter of legal disputes. A court must, therefore, make "findings of fact and

conclusions of law upon the granting or refusing of a preliminary injunction." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1178 (3d Cir. 1990) (citing FED. R. CIV. P. 52(a)(2)). At the preliminary injunction stage, "procedures [] are less formal and evidence [] is less complete than in a trial on the merits." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004); *see also AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) ("[T]he grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing [that] is the responsibility of the district judge." (internal citations omitted)). Accordingly, a court "may rely on affidavits and hearsay materials which would not be admissible evidence." *Kos Pharms.*, 369 F.3d at 718 (quoting in parenthetical *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995)). The weight given to such materials will "vary greatly depending on the facts and circumstances of a given case." *Id.* at 719. A court is also tasked with assessing the credibility of witness testimony and may base the decision to grant or deny a preliminary injunction on credibility determinations. *See, e.g., Hudson Glob. Res. Holdings, Inc. v. Hill*, 2007 WL 1545678, at *8 (W.D. Pa. May 25, 2007).

Against this backdrop, a district court maintains the sound discretion to grant or deny a preliminary injunction. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 178–79 (3d Cir. 2017) ("District courts have the freedom to fashion preliminary equitable relief so long as they do so by 'exercising their sound discretion.'" (internal citation omitted)). The primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994). The "status quo" refers to "the last, peaceable, noncontested status of the parties." *Kos Pharms.*, 369 F.3d at 708.

### III.    ANALYSIS

#### A.  Count I: Patent Infringement

##### a.  Reasonable Likelihood of Success on the Merits

To demonstrate a likelihood of success on the merits, LKRB must demonstrate that, in light of the presumptions and burden that will be inherent at a trial on the merits, that (1) LKRB will likely show that Defendants infringe on the patent and (2) LKRB's infringement claim will likely withstand Defendants' challenges to the validity and enforceability of the patent. *See Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997). If Defendants raise a substantial question concerning either infringement or validity, i.e., asserts an infringement or invalidity defense that LKRB cannot prove lacks substantial merit, the Court will not grant a preliminary injunction. *See id.* An infringement analysis requires two steps. First, the Court must determine the claim at issue's scope. *See, e.g., Young Dental Mfg. Co. v. Q3 Special Prods., Inc.*, 112 F.3d 1137, 1141 (Fed. Cir. 1997). Second, the Court must compare the properly construed claim with the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent. *Id.* In light of the evidence submitted, the Court finds that LKRB has demonstrated the likelihood of success on the merits of its infringement claim with respect to Defendant Nos. 9, 13, 25-27, 33, and 87. LKRB has failed to demonstrate a likelihood of success on the merits with regard to Defendant Nos. 10, 15, 23, 31, 34, 36, 39, 41, 45, 49, 63, 70, 76, 77, 84, 88, and 92-94.

##### i.    *Claim Construction*

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or

catechism for conducting claim construction.'  Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324) (alteration in original).  When construing patent claims, the Court considers the literal language of the claim, the patent specification, and the prosecution history.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc).  Of these sources, "the specification is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).

For utility patents, claim construction involves determining what the technical words in the claim mean.  "[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Id.* at 1312–13 (internal citations and quotation marks omitted).  "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted).  "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314; *see also See Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (holding that the claims did "not require elaborate interpretation").

Defendants are not disputing the meaning of any claim terms.  Thus, no elaborate claim construction is necessary, and the Court may rely on the plain language in the patent specification as the meaning of the claim as outlined below.  The Court accepts the language within the patent

specification as the meaning and scope of the '988 Patent. This construction is without prejudice to any future motions on prosecution history, prior art, or any similar factors.

ii.    *Infringement*

Since the Court has determined that claim construction is unnecessary in this case, the next step is to compare the '988 Patent with the accused products to determine if infringement likely occurred. Federal law prohibits one, without authority, from making, using, offering to sell, or selling any patented invention within the United States or imported into the United States. 35 U.S.C. § 271(a). Utility patents may be infringed both literally and under the doctrine of equivalents. A device infringes a utility patent "literally" if "every limitation recited in the claim is found in the accused device." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1341 (Fed. Cir. 2016).

Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there are 'equivalents' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997) (internal citations omitted). For doctrine of equivalents purposes, the accused and claimed elements are equivalent if there are only "insubstantial differences" between them. *Id.* at 39. An alternate formulation focuses on whether the "substitute element matches the function, way, and result of the claimed element." *Id.* at 40; *see also Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 612 (1950) (finding equivalents when the "changes which avoid literal infringement are colorable only"). The doctrine recognizes that

> [t]he language in the patent claims may not capture every nuance of the invention or describe with complete precision the range of its novelty. If patents were always interpreted by their literal terms, their value would be greatly diminished.

Unimportant and insubstantial substitutes for certain elements could defeat the patent, and its value to inventors could be destroyed by simple acts of copying.

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731 (2002); *Graver Tank*, 339 U.S. at 605 ("[T]o permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing."). The determination of infringement under the doctrine of equivalents is limited by two primary legal doctrines, prosecution history estoppel and the "all elements" rule, the applications of which are questions of law. *Seachange Int'l, Inc. v. C–COR, Inc.*, 413 F.3d 1361, 1378 (Fed. Cir. 2005).

With respect to utility patents, prosecution history estoppel limits a patentee's ability to recover under the doctrine of equivalents but does not limit literal infringement. "The doctrine of prosecution history estoppel bars a patentee from asserting as an equivalent subject matter surrendered during prosecution of the patent application*." Eagle Comtronics, Inc. v. Arrow Commc'n Lab'ys, Inc.*, 305 F.3d 1303, 1316 (Fed. Cir. 2002) (internal citations omitted). The doctrine is founded on the public notice function of patents. The Supreme Court has recognized that "[t]here can be no denying that the doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirement." *Warner–Jenkinson*, 520 U.S. at 29. Consequently, prosecution history estoppel limits the bounds of what a patentee can claim as equivalent by "requir[ing] that the claims of a patent be interpreted in light of the proceedings in the PTO during the application process." *Festo Corp.*, 535 U.S. at 740. Where subject matter is surrendered during prosecution, prosecution history estoppel prevents the patentee from "recaptur[ing] in an infringement action the very subject matter surrendered as a condition of receiving the patent." *Id.* at 734.

The other limit on the doctrine of equivalents is the "all elements" rule. The all-elements rule is that an accused device must contain every claimed element of the invention or the equivalent

of every claimed element. *See Warner–Jenkinson*, 520 U.S. at 29. No claimed element, or an equivalent thereof, can be absent if the doctrine of equivalents is invoked. The "all elements" rule attempts to balance the doctrine of equivalents with the basic patent law principle that claim language defines the scope of an invention and every limitation is material.

Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole. It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety. *Warner–Jenkinson*, 520 U.S. at 29. "Thus, as a practical matter, the 'all elements' rule informs a doctrine of equivalents analysis by requiring that equivalents be assessed on a limitation-by-limitation basis, rather than from the perspective of the invention as a whole, and that no limitation be read completely out of the claim." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005).

In certain instances, the "all elements" rule "forecloses resort to the doctrine of equivalents because, on the facts or theories presented in a case, a limitation would be read completely out of the claim—i.e., the limitation would be effectively removed or 'vitiated.'" *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1017 (Fed. Cir. 2006). The "all elements" rule generally is not met—and therefore a claim limitation can be said to be vitiated—if the theory or evidence of equivalents is legally incapable of establishing that the differences between the limitation in the claim and the accused device are insubstantial; i.e., "if the theory or evidence is so legally insufficient as to warrant a holding of non-infringement as a matter of law." *Id.* (citing *Warner–Jenkinson*, 520 U.S. at 39 n. 8). "[C]ourts must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an

insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." *Freedman Seating*, 520 F.3d at 1358.

LKRB generally argues that Defendants' products are "(1) substantially identical to each other and the same in all respects in their infringement of the Asserted Patent; and (2) substantially identical to HGP LED strips such that consumers are likely to be confused." (ECF No. 3, p. 8). Specifically, LKRB alleges that Defendants infringed on independent Claim One of the '988 Patent. (*Id.* at 18). Claim One discloses:

> An encapsulated flexible LED light strip comprising: a flexible Substrate having a rectangular-shaped central portion and *a plurality of Support tabs laterally extending from elongate lateral sides of the central portion and spaced apart along the elongate lateral sides of the central portion*; an LED light circuit at the central portion of the flexible Substrate and having at least three spaced-apart LED lights; a Substantially Voidless flexible plastic housing encapsulating the LED light circuit and the central portion of the flexible substrate; wherein the flexible plastic housing has a length extending between opposed ends, a width extending between opposed lateral sides, and a thickness extending between opposed front and rear sides; wherein the encapsulated flexible LED light strip has a minimum flexibility of the length such that when the length is shorter than 200 mm every 80 mm section of the length can bend over an arc of 20 degrees and when the length is 200 mm or longer every 150 mm section of the length can bend over an arc of 20 degrees; wherein the length is in the range of 80 mm to 2.0 m: wherein the length to the width has a ratio of at least 8:1; at least one flexible electrical cable extending from the LED light circuit and through the flexible plastic housing; and wherein the flexible plastic housing forms a contoured strain relief for at least one flexible electrical cable.

(ECF No. 122-1, p. 26) (emphasis added). The most contested element of the claim is whether the alleged infringing products include a plurality of support tabs.[1] Below is an image of the subject of the '988 Patent – LKRB's LED light strip:

---

[1] At this stage, the Court will only consider the arguments brought before the Court regarding infringement. For instance, if a defendant argues that its product is not infringing because its product does not contain support tabs, the Court will analyze the support tab limitation of Claim One. If neither LKRB nor a given defendant argues a limitation of Claim One, for instance length, in relation to a certain product, the Court will not analyze that element under literal or doctrine of equivalents infringement. At the preliminary injunction phase, LKRB has to prove a reasonable



(ECF No. 3, p. 8). After reviewing LKRB's claim limitations and the limitations of the allegedly infringing products, the Court holds that LKRB demonstrated a likelihood of success on the merits on Count I of the complaint (infringement) with regard to Defendant Nos. 9, 13, 25-27, 33, and 87. The Court will grant requested preliminary injunction with regard to those Defendants. With regards to Defendant Nos. 10, 15, 23, 31, 34, 36, 39, 41, 45, 49, 63, 70, 76, 77, 84, 88, and 92-94, the Court holds that LKRB did not demonstrate a reasonable likelihood of success on the merits. The Court will deny the requested injunction with regard to those Defendants.

a.   Defendant No. 93

Defendant No. 93 sells the product pictured below:



---

likelihood of success on the merits. In order to avoid converting preliminary injunction hearings into full trials on the merits, the Court will view any limitations of Claim One that are not contested as waived by the defendant solely for the purposes of determining whether the Court will grant LKRB's motion for a preliminary injunction.

(ECF No. 78, p. 8); (*see also* ECF No. 122-4, p. 72).  Defendant No. 93 argues that LKRB failed to prove literal or doctrine of equivalents infringement because its product "does not have support pieces that extend laterally from the central part and are spaced apart along the long side edges of the central part." (*Id.* at 7).

LKRB has not produced any evidence showing that Defendant No. 93's product had support tabs.  The Court cannot tell from the images provided whether the product was manufactured using support tabs.  (*See* ECF No. 116, pp. 39-40 (stating that support tabs often are not visible with the naked eye and may only be visible with microscopic imaging)).  The owner of LKRB, Buckley, testified that he examined some of the accused products for support tabs.  (*Id.*).  Buckley stated in relation to several Defendants, including Defendant No. 93, that he was unsure whether he examined their specific product for support tabs.  (*Id.*).  Buckley further testified that he analyzed "[m]aybe 20 or so" products but did not examine the product of every defendant in this litigation for support tabs.  (*Id.* at 28).  The inclusion of support tabs is an element of Claim One.  ( ECF No. 122-1, p. 26).  Since the Court cannot determine whether Defendant No. 93's product includes support tabs, the Court holds that Defendant No. 93's product does not literally infringe on the '988 Patent.

Further, under the all elements rule of the doctrine of equivalents, even if an allegedly infringing product does not contain every claim element of the invention, it must contain the equivalent of every claimed element.  *See Warner–Jenkinson*, 520 U.S. at 29.  For example, assume that a utility patent for a chair requires that the chair have "three or more spaced legs" and "each leg having one relatively flat end."  *See* Complex Litigation Committee of the American College of Trial Lawyers, Anatomy of a Patent Case, 3 (2d ed. 2012).  If someone sells a chair with one or two legs but everything else is the same as claimed in the patent,

then there is no literal infringement because the claim requires "three or more spaced legs." *Id.* However, if someone sells a chair with three spaced legs where two of the legs have relatively flat ends and one has a rounded end, there is likely doctrine of equivalents infringement because there is the *equivalent* of every claimed element.

Here, LKRB has not presented any evidence or argument that Defendant No. 93's product has the equivalent of support tabs. The Court acknowledges that the main role of support tabs is to help with alignment during manufacturing. (ECF No. 115, p. 20). Support tabs do not appear to serve a function to the eventual consumer. However, since each element contained in a patent claim is material to defining the scope of the invention, the Court cannot read the limitation out of the '988 Patent simply because the support tabs are not necessarily useful to a consumer. LKRB's conclusory and general statement that "Defendants' Products infringed under the doctrine of equivalents because Defendants' Products performed substantially the same function in substantially the same way to obtain the same result as one or more claims of the Asserted Patent," (ECF No. 3, p. 19), is both insufficient and misreads the law. The doctrine of equivalents is not focused on whether the end product serves the same function in substantially the same way as the patented invention. Instead, the inquiry is whether every element of each patented claim is present either literally or with insubstantial differences. Since LKRB failed to produce evidence that the allegedly infringing product contains support tabs or the equivalent thereof, the Court holds that LKRB did not meet its burden to show a reasonable likelihood of success on the merits as to Defendant No. 93.

b.   Defendant No. 39

Defendant No. 39 sells the product pictured below:



(ECF No. 78, p. 8); (*see also* ECF No. 122-4, p. 74).  Defendant No. 39 argues that its product does not infringe on the '988 Patent literally or under the doctrine of equivalents because its product (1) "does not have support pieces that extend laterally from the central part and are spaced apart along the long side edges of the central part, and (2) "does not have a flexible plastic shell." (*Id.* at 7).

LKRB has not presented evidence that Defendant No. 39's product contains support tabs or the equivalents of support tabs.  (*See* ECF No. 116, p. 39-40 (stating that Buckley could not remember the specific product of Defendant No. 39)).  The Court cannot discern from the images provided whether Defendant No. 39's product features support tabs or the equivalents thereof. Since LKRB has not presented evidence showing that Defendant No. 39 infringes on the '988 Patent either literally or under the doctrine of equivalents, the Court holds that LKRB has not

demonstrated a reasonable likelihood of success on the merits of an infringement action against Defendant No. 39.

c.  Defendant No. 34

Defendant No. 34 sells the below-depicted product:



(ECF No. 80, p. 4); (*see also* ECF No. 122-4, pp. 85, 98).  Defendant No. 34 argues that its product does not infringe on the '988 Patent because its product "do[es] not have such support pieces that extend laterally from the central part and are spaced apart along the long side edges of the central part." (*Id.* at 5).

LKRB has not presented evidence that Defendant No. 34's product contains support tabs or the equivalents of support tabs.  (*See* ECF No. 116, pp. 7, 39 (stating that Buckley does not know whether any of the included Defendants' products feature support tabs)).  The Court cannot discern from the images provided whether Defendant No. 34's product features support tabs or the equivalents thereof.  Since LKRB has not presented evidence showing that Defendant No. 34 infringed on the '988 Patent, either literally or under the doctrine of equivalence, the Court holds that LKRB has not demonstrated a reasonable likelihood of success on the merits of an infringement action against Defendant No. 34.

d.  Defendant Nos. 23, 36, 41, 45, 49, 63, 76, 77, and 92

Defendant Nos. 23, 36, 41, 45, 49, 63, 76, 77, and 92 sell or offer to sell the following products:

| Defendant No. 23 |  |
| --- | --- |
| Defendant No. 36 |  |
| Defendant No. 41 |  |
| Defendant Nos. 45 and 76 |  |
| Defendant No. 49 |  |

| Defendant Nos. 63 and 77 | |
|---|---|
| Defendant No. 92 | |



(ECF No. 82-2, pp. 2-5); (*see also* ECF No. 122-4, pp. 23, 31, 35, 39, 52, 59-60, 71). Defendants argue that their products do not infringe on the '988 Patent because their products do not have support tabs as required by Claim One of the '988 Patent. (ECF No. 82, p. 7).

LKRB has not presented evidence that the included Defendants' products contain support tabs or the equivalents of support tabs. The Court cannot discern from the images provided whether the included Defendants' products feature support tabs or the equivalents thereof. Since LKRB has not presented evidence showing that the included Defendants infringed on the '988 Patent either literally or under the doctrine of equivalents, the Court holds that LKRB has not demonstrated a reasonable likelihood of success on the merits of an infringement action against Defendant Nos. 23, 36, 41, 45, 49, 63, 76, 77, and 92.

e.   Defendant Nos. 70, 84, 88, and 94

Defendant Nos. 70, 84, 88, and 94 sell or offer to sell the product pictured below:



(ECF No. 105-3, p. 4); (*see also* ECF No. 122-4, pp. 67, 77-79, 97, 109 (depicting Defendant Nos. 88, 94, 70 and 84's product respectively)).  The listed Defendants contend that they do not infringe on the '988 Patent because their product does not include "a plurality of support tabs laterally extending from elongate lateral sides of the central portion and spaced apart along the elongate lateral sides of the central portion" or a "flexible plastic housing encapsulating the LED light circuit and the central portion of the flexible substrate" as detailed in Claim One of the '988 Patent. (ECF No. 105, p. 4).

The Court cannot discern from the images provided whether Defendant Nos. 70, 84, 88, and 94's product features support tabs or the equivalents thereof.  Since LKRB has not presented evidence showing that the listed Defendants' product infringes on the '988 Patent, either literally or under the doctrine of equivalents, the Court holds that LKRB has not demonstrated a reasonable

likelihood of success on the merits of an infringement action against Defendant Nos. 70, 84, 88, and 94.

f.   Defendant No. 9

According to LKRB, Defendant No. 9 manufactures, sells, or offers to sell the product depicted below:





(ECF No. 122-4, p. 16); (ECF No. 124-1, p. 1).  The top image is a wider view of the product.  The lower image displays what LKRB argues is a support tab on the edge of Defendant No. 9's product. (ECF No. 144, p. 46).  The red circles highlight the location of the alleged support tabs.  (*Id.*) Defendant No. 9 argues that its product does not infringe on the '988 Patent because it lacks the required support tabs.  (ECF No. 126, p. 19).  Further, at the preliminary injunction hearing, Defendant No. 9 argued that it did not infringe on the '988 Patent because (1) the image at ECF

20

No. 124-1, p. 16 shows only one support tab (not a plurality of support tabs) and (2) the "stray pieces of plastic" that appear at the edges of its product are not support tabs. (ECF No. 144, p. 51, 64). In response, Buckley testified that the support tabs "exist[] along the edge of the product at repeated intervals." (*Id.* at 52).

The Court credits Buckley's testimony and finds that the images above depict an example of a support tab on Defendant No. 9's product as required by the '988 Patent. The Court notes that Defendant No. 9 produced a declaration whereby its director, Jinquan Xiao ("Xiao"), stated that its product does not feature support tabs. (ECF No. 126-1, p. 2). Xiao did not appear during the hearing held on January 17, 2025, to testify as to the contents of his declaration. Given that Xiao was not subject to cross-examination regarding his statements, the Court gives the declaration the weight it is due –fairly little. The Court holds that LKRB showed a reasonable likelihood of success on the merits of a literal infringement action against Defendant No. 9.

g.  Defendant No. 10

According to LKRB, Defendant No. 10 produces and sells the below-depicted product:



(ECF No. 122-4, p. 17). Defendant No. 10 has not submitted any written advocacy or briefing. However, counsel for Defendant No. 10 appeared at the preliminary injunction hearing on December 23, 2024, to oppose the preliminary injunction. (*See* ECF No. 66). During the hearing, Defendant No. 10 did not present witnesses, but argued that its product is different from the '988 Patent because it (1) was a different length from the patented invention, (2) did not feature

contoured strain relief, and (3) did not have support tabs. (*Id.* at 21, 25, 27). Following the hearing, LKRB filed a supplemental brief addressing Defendant No. 10's arguments. LKRB included the following images which, according to LKRB, depict support tabs that have been trimmed off of Defendant No. 10's product.



(ECF No. 74-1, p. 2). LKRB alleges that the red circles in the images above identify the remainder of the support tabs. (*Id.*). The Court found Buckley to be a credible witness. It light of the evidence presented, the Court holds that LKRB presented evidence that Defendant No. 10's product included support tabs as required by Claim One of the '988 Patent.

Regarding the plastic housing which provides contoured strain relief, Defendant No. 10 argues that its product does not feature a strain relieving sleeve or housing. (*Id.* at 27). From the image LKRB provided above, the Court cannot discern whether Defendant No. 10's product features a strain relief device of any kind. The image cuts off the edge of the product preventing the Court from assessing whether this feature is present. Since the Court cannot determine whether the product features a strain relief device, there is no literal infringement. Further, since the Court cannot see the edge of Defendant No. 10's product, the Court cannot determine whether there is an equivalent feature. Thus, there is no doctrine of equivalents infringement. Since the Court cannot determine whether Defendant No. 10's product features strain relief or an equivalent element, the Court does not reach the issue of whether Defendant No. 10's product features support tabs or can be cut to within the patented length. The Court holds that LKRB's evidence is insufficient to show a likelihood of success on the merits in relation to its infringement allegation against Defendant No. 10.

h.  Defendant No. 13

LKRB provided the following images of Defendant No. 13's product:



(ECF No. 122-4, p. 104).



(ECF No. 124-1, p. 2).

Defendant No. 13 argues that its product does not infringe on the '988 Patent because it lacks the required support tabs. (ECF No. 129, p. 19). Further, at the preliminary injunction hearing, Defendant No. 13 argued that it did not infringe on the '988 Patent because (1) the image of the product above shows only one support tab (not a plurality of support tabs) and (2) the "stray pieces of plastic" that appear at the edges of its product are not support tabs. (ECF No. 144, p. 51, 64). In response, Buckley testified that the support tabs "exist[] along the edge of the product at repeated intervals." (*Id.* at 52).

The Court credits Buckley's testimony and finds that the images above depict an example of a support tab on Defendant No. 13's product as required by the '988 Patent. The Court notes that Defendant No. 13 produced a declaration whereby its director, Shiwei, stated that its product does not feature support tabs. (ECF No. 129-1, p. 2). Shiwei did not appear during the hearing held on January 17, 2025, to testify as to the contents of his declaration. Given that Shiwei was not subject to cross-examination regarding his statements, the Court gives his declaration relatively little weight. The Court holds that LKRB showed a reasonable likelihood of success on the merits of a literal infringement action against Defendant No. 13.

i.    Defendant Nos. 15, 27, and 87

According to LKRB, Defendant Nos. 15, 27, and 87 manufacture and sell the below-pictured products:

**Defendant No. 15**



(ECF No. 122-4, p. 19).

**Defendant No. 27**



(ECF No. 122-4, p. 27).



(ECF No. 124-1, p. 5).  LKRB alleges that the red circles on the above images show where support tabs were trimmed from the LED light strip.

**Defendant No. 87**



(ECF No. 122-4, p. 66).



(ECF No. 124-1, p. 7).  LKRB alleges that the red circles on the above images show where support tabs were trimmed from the LED light strip.

Defendant Nos. 15, 27, and 87 argue that their products do not infringe on the '988 Patent because they lack the required support tabs.  (ECF No. 130, p. 19).  Further, at the preliminary injunction hearing, these Defendants argued that they did not infringe on the '988 Patent because (1) the image of the products shows only one support tab (not a plurality of support tabs) and (2) the "stray pieces of plastic" that appear at the edges of the products are not support tabs.  (ECF No. 144, p. 51, 64).  In response, Buckley testified that the support tabs "exist[] along the edge of the product at repeated intervals."  (*Id.* at 52).

The Court finds that LKRB did not produce any evidence that Defendant No. 15's product featured support tabs.  The Court cannot discern from the images provided whether Defendant No.

15's product feature support tabs or the equivalents thereof. Since LKRB has not presented evidence showing that Defendant No. 15's product infringes on the '988 Patent, either literally or under the doctrine of equivalence, the Court holds that LKRB has not demonstrated a reasonable likelihood of success on the merits of an infringement action against Defendant No. 15.

In relation to Defendant Nos. 27 and 87, the Court credits Buckley's testimony and finds that the images above depict an example of a support tab on Defendant Nos. 27 and 87's products as required by the '988 Patent. The Court notes that Defendant Nos. 27 and 87 produced a declaration whereby their director, Jiamiao Chen ("Chen"), stated that their products do not feature support tabs. (ECF No. 130-1, p. 2). Chen did not appear during the hearing held on January 17, 2025, to testify as to the contents of his declaration. Given that Chen was not subject to cross-examination regarding his statements, the Court gives his declaration relatively little weight. The Court holds that LKRB showed a reasonable likelihood of success on the merits of a literal infringement action against Defendant Nos. 27 and 87.

j.  Defendant Nos. 25 and 26

According to LKRB, Defendant Nos. 25 and 26 manufacture and sell the below-depicted products:

**Defendant No. 25**



(ECF No. 122-4, p. 25).



(ECF No. 124-1, p. 3).  LKRB alleges that the red circles on the above images show where support tabs were trimmed from the LED light strip.

**Defendant No. 26**



(ECF No. 122-4, p. 26).



(*Id.* at 4).  LKRB alleges that the red circles on the above images show where support tabs were trimmed from the LED light strip.

Defendant Nos. 25 and 26 argue that their products do not infringe on the '988 Patent because they lack the required support tabs. (ECF No. 131, p. 19). Further, at the preliminary injunction hearing, the listed Defendants argued that they did not infringe on the '988 Patent because (1) the images of the products show only one support tab (not a plurality of support tabs) and (2) the "stray pieces of plastic" that appear at the edges of the product are not support tabs. (ECF No. 144, p. 51, 64). In response, Buckley testified that the support tabs "exist[] along the edge of the product at repeated intervals." (*Id.* at 52).

The Court credits Buckley's testimony and finds that the images above depict an example of a support tab on Defendant Nos. 25 and 26 as required by the '988 Patent. The Court holds that LKRB showed a reasonable likelihood of success on the merits of a literal infringement action against Defendant Nos. 25 and 26.

k.   Defendant Nos. 31 and 33

LKRB alleges that Defendant Nos. 31 and 33 offer to sell the following products:

**Defendant No. 31**



(ECF No. 122-4, p. 73).

**Defendant No. 33**



(ECF No. 122-4, p. 28)



(ECF No. 124-1, p. 6).

Defendant Nos. 31 and 33 argue that their products do not infringe on the '988 Patent because they lack the required support tabs. (ECF No. 130, p. 19). Further, at the preliminary injunction hearing, the listed Defendants argued that they did not infringe on the '988 Patent because (1) the images of the products above show only one support tab (not a plurality of support tabs) and (2) the "stray pieces of plastic" that appear at the edges of the products are not support tabs. (ECF No. 144, p. 51, 64). In response, Buckley testified that the support tabs "exist[] along the edge of the product at repeated intervals." (*Id.* at 52).

The Court finds that LKRB did not produce any evidence that Defendant No. 31's product featured support tabs. The Court cannot discern from the images provided whether Defendant No. 31's product featured support tabs or the equivalents thereof. Since LKRB has not presented

evidence showing that Defendant No. 31's product infringes on the '988 Patent, either literally or under the doctrine of equivalents, the Court holds that LKRB has not demonstrated a reasonable likelihood of success on the merits of an infringement action against Defendant No. 31.

The Court credits Buckley's testimony and finds that the images above depict an example of a support tab on Defendant No. 33's product as required by the '988 Patent. The Court holds that LKRB showed a reasonable likelihood of success on the merits of a literal infringement action against Defendant No. 33.

iii.    *Validity of the Patent*

Since the Court held that LKRB has shown a reasonable likelihood of success on the merits by Defendant Nos. 9, 13, 25-27, 33, and 87, the Court must proceed to the next step of the analysis – analyzing the validity of the patent. Defendants contend that the patent is invalid for obviousness under 35 U.S.C. § 103. (*See* ECF Nos. 83, 126, 129, 130, 131, 132). Issued patents are entitled to a presumption of validity. 35 U.S.C. § 282(a). Thus, if Defendants raise a "substantial question" that the patent is invalid, the Court may not grant LKRB a preliminary injunction. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51 (Fed. Cir. 2001); *see also Erico Int'l Corp. v. Vutec Corp.*, 516 F.3d 1350, 1356 (Fed. Cir. 2008) (stating that "a showing of a substantial question of invalidity requires less proof than the clear and convincing standard to show actual invalidity" imposed at trial).

35 U.S.C. § 103 states:

A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

35 U.S.C. § 103. Whether a patent is invalid as obvious "is a question of law, based on the underlying factual findings." *K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1364 (Fed. Cir. 2014). The obviousness determination is centered on four factual inquiries, known as the *Graham* factors: "(1) the scope and content of prior art, (2) differences between claims and prior art, (3) the level of ordinary skill in pertinent art, and (4) secondary considerations such as commercial success and satisfaction of a long-felt need." *LKQ Corp. v. GM Glob. Tech. Operations LLC*, 102 F.4th 1280, 1295 (Fed. Cir. 2024); *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 399 (2007); *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17 (1966). The Federal Circuit has explained that:

> Obviousness requires more than a mere showing that the prior art includes separate references covering each separate limitation in a claim under examination. Rather, obviousness requires the additional showing that a person of ordinary skill at the time of the invention would have selected and combined those prior art elements in the normal course of research and development to yield the claimed invention.

*Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1360–61 (Fed. Cir. 2011) (internal citations omitted). The obviousness analysis should not be conducted in a "narrow, rigid manner," but instead should focus on whether a claimed invention is merely "the result of ordinary innovation" which is not entitled to patent protection. *KSR Int'L*, 550 U.S. at 427-28. The analysis is "expansive and flexible" and "need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *Id.* at 415. The prior art references must not be analyzed in isolation, but with consideration of their "interrelated teachings." *Id.* at 418.

A person of ordinary skill in the art is attributed with knowledge of relevant prior art. *Rothman v. Target Corp.*, 556 F.3d 1310, 1318 (Fed. Cir. 2009). As the Supreme Court explained in *KSR Int'l Co.*, a patent claiming the "combination of elements of prior art" is likely invalid as

obvious if a person of ordinary skill in the art could "implement a predictable variation" of those elements. *KSR Int'l Co.*, 550 U.S. at 417. Such a combination is proved obvious if "there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." *Id.* at 419–20.

> When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance the fact that a combination [is] obvious to try might show that it was obvious under § 103.

*Id.* at 421.

Defendant Nos. 9, 13, 25-27, 33, and 87 argue that the following patents and patent application publications constitute prior art to the '988 Patent: (1) U.S. Patent No. 7,140,751 ("Lin I"), (2) Patent Application Publication No. 2003/0193802 ("Lin II"), and (3) Patent Application Publication No. 2009/0154182 ("Veenstra"). (ECF No. 126, pp. 5-12); (ECF No. 129, pp. 5-12); (ECF No. 130, pp. 5-12); (ECF No. 131, pp. 5-12); (ECF No. 132, pp. 5-12). In view of the above-mentioned prior arts, Defendant Nos. 9, 13, 25-27, 33, and 87 argue that Claim One of the '988 Patent is "very likely invalid as anticipated and/or being obvious over these prior arts." (ECF No. 126, pp. 20-21); (ECF No. 129, pp. 20-21); (ECF No. 130, pp. 20-21); (ECF No. 131, pp. 20-21); (ECF No. 132, pp. 20-21).

Even assuming that the '988 Patent is solely a combination of elements of prior art, the Court holds that all listed Defendants did not raise a substantial question as to the validity of the patent at this stage of the litigation. The listed Defendants did not define who "a person of ordinary skill in the art" is under this analysis. Since the parties have not provided the Court with a workable definition, it is difficult, if not impossible, for the Court to perform the proper analysis. The Court cannot create this definition without guidance from either party. *See e.g., Dey, L.P. v. Teva*

*Parenteral Medicines, Inc.*, 6 F. Supp. 3d 651, 675 (N.D.W. Va. 2014) (stating that the parties agreed that a person of ordinary skill in the art for purposes of the action "would have either an advanced degree in pharmacy or a graduate degree in pharmaceutics, along with several years of experience with pharmaceutical formulations"). Further, determining who is a person of ordinary skill in the art is a factual question that the Court cannot decide with no evidentiary record. Given that Defendants bear the burden of raising a substantial question as to the validity of the '988 Patent, their failure to provide the necessary definition results, at least at this stage of the litigation, in the failure of their argument. Without a workable definition, the Court cannot assess the third *Graham* factor – the level of ordinary skill in pertinent art.

Defendants also did not provide the Court with any evidence or argument as to the fourth *Graham* factor – "secondary considerations such as commercial success and satisfaction of a long-felt need." In sum, because the Court does not have sufficient evidence to assess whether "a person of ordinary skill at the time of the invention would have selected and combined those prior art elements in the normal course of research and development to yield the claimed invention," *Unigene Labs.*, 655 F.3d at 1360–61, the Court holds that Defendants did not raise a substantial question regarding the validity of the patent.

### b. Irreparable Harm

There is no presumption of irreparable harm upon a finding of patent infringement. *Robert Bosch LLC v. Pylon Mfr. Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011). To meet the requirements for irreparable harm, LKRB must establish (1) "that absent an injunction, it will suffer irreparable harm" and (2) "that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Apple Inc. v. Samsung Electronics Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012) ("*Apple II*") (internal citations omitted). In doing so, it must also clearly show "a likelihood of

substantial and immediate irreparable injury." *Id.* For the casual nexus prong, the Court must determine to "what extent the harm resulting from selling the accused product can be ascribed to the infringement." *Apple II*, 695 F.3d at 1375. "The causal nexus requirement ensures that an injunction is only entered against a defendant on account of a harm resulting from the defendant's wrongful conduct, not some other reason." *Apple Inc. v. Samsung Electronics Co.*, 809 F.3d 633, 640 (Fed. Cir. 2015) ("*Apple III*").

Buckley stated that LKRB has suffered, and, if Defendants are permitted to continue to sell their infringing product, will suffer

> (1) the loss of the exclusivity to which [LKRB] is entitled for the inventions claimed in the [Utility] Patent, (2) the market share which [LKRB] may never be able to recover, (3) the goodwill and reputation in the market for the inventions already sold and still being sold without authorization, and (4) the diminished sales due to Defendant[s]'s false marketing.

(ECF No. 5-1, p. 7); *See, e.g., Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994) (recognizing that "future infringement . . . may have market effects never fully compensable in money"). Buckley further asserted that "Defendants' inclusion of the inventive features of the ['988] Patent is the predominant, if not exclusive, reason for the demand for Defendants' Products because those features are desired by the consuming public (and explicitly advertised by Defendants)." (*Id.*).

The Court credits Buckley's statements and finds, at this stage of the litigation, that Defendant Nos. 9, 13, 25-27, 33, and 87 actions of selling and offering to sell infringing products is causing irreparable harm to LKRB's market share, goodwill and reputation, pricing power, and sales. *See e.g., Medicine Shoppe Intern., Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) ("Loss of intangible assets such as reputation and goodwill can constitute irreparable injury."); *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.*,

290 F.3d 578, 595–96 (3d Cir. 2002) (affirming the district court's grant of a preliminary injunction and concluding that loss of market share constitutes irreparable harm); *Malibu Boats, LLC v. Nautique Boat Co.*, 997 F. Supp. 2d 866, 885 (E.D. Tenn. 2014) ("Price erosion, loss of goodwill, damage to goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."); *Robert Bosch*, 659 F.3d at 1149 (stating that courts should not "entirely ignore the fundamental nature of patent as property rights granting the owner the right to exclude").  Buckley obtained the ownership interest of the '988 Patent on behalf of his business, LKRB, in 2021.  Since acquiring the '988 Patent, he "has been revitalizing Plaintiff's business by pivoting from bike lights to the larger category of LED light strips by selling HGP LED Strips (i.e., encapsulated flexible LED light strips which embody claims of the Asserted Patent) under the brand name Happy Grandpa." (ECF No. 3, p. 5).  LKRB has invested significant time, capital and other resources to promote and sell its patented product. Absent an injunction, Defendants can continue to ride LKRB's coattails while simultaneously undermining LKRB's efforts at quality control and product marketing.

If LKRB is unable to prevent infringers from selling its product, LKRB may never be able to obtain any market share or fully appreciate the exclusivity that it is entitled to by virtue of the '988 Patent.  Further, irreparable harm is likely to be present in situations involving direct competitors where there is "loss in market share and access to potential customers resulting from [the infringing party's] introduction of infringing [products.]" *Robert Bosch*, 659 F.3d at 1151. *See also, e.g., TEK Global, S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 793 (Fed. Cir. 2019) ("Head-to-head competition and lost market share tend to evidence irreparable harm.").  From the evidence introduced, it appears that LKRB and Defendant Nos. 9, 13, 25-27, 33, and 87 are direct competitors in the lighting industry.  The continuing nature of such harm, especially when the

infringing acts may "significantly change the relevant market," can make monetary damages "difficult to quantify." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010); *Hybritech*, 849 F.2d at 1457 ("If monetary relief were the sole relief afforded by the patent statute then injunctions would be unnecessary and infringers could become compulsory licensees for as long as the litigation lasts." (internal citations omitted)). Finally, the Court acknowledges that a monetary judgment may be difficult for LKRB to collect since Defendant Nos. 9, 13, 25-27, 33, and 87 are foreign entities. The Court holds that LKRB sufficiently demonstrated that it will likely suffer irreparable harm if a preliminary injunction is not issued against Defendant Nos. 9, 13, 25-27, 33, and 87.

### c.  Harm to the Opposing Party

The third equitable factor "assesses the relative effect of granting or denying an injunction on the parties." *i4i Ltd.*, 598 F.3d at 862. A court may consider several factors in its analysis, including "the parties' sizes, products, and revenue sources." *Id.* A court should not, however, give much weight to the harmful effects an injunction would have on a party who based their business on an infringing product. *See Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1306 (Fed. Cir. 2012) ("As we have noted, '[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.'" (quoting *Broadcom Corp. v. Qualcomm Inc*, 543 F.3d 683, 704 (Fed. Cir. 2008))).

The Court does not have significant record evidence detailing the parties' relative sizes, products, or revenue sources. On the one hand, LKRB has suffered irreparable harm to its business due to Defendant Nos. 9, 13, 25-27, 33, and 87's infringement. The harm will be ongoing absent an injunction. On the other hand, Defendants will undoubtedly suffer from a permanent injunction,

losing sales and market share. But there is no evidence Defendants have expended significant resources in developing, designing, making or advertising their products.

The harm to LKRB if Defendants are permitted to continue their allegedly infringing actions outweighs the harm to Defendant Nos. 9, 13, 25-27, 33, and 87 that will be caused by the preliminary injunction. As discussed above, if Defendants are permitted to continue selling allegedly infringing products, LKRB will suffer further erosion of goodwill and reputation, diminished sales, and loss of exclusivity, pricing power, and market share. Defendants, on the other hand, will be called upon to do no more than refrain from infringing on LKRB's patent – an action they have no right to take and an alleged violation of United States patent law. This factor weighs in favor of granting the preliminary injunction.

### d. Public Interest

The final factor the Court must consider is whether granting the injunction would serve the public interest. *Roper Corp. v. Litton Systems, Inc.*, 757 F.2d 1266, 1269 (Fed. Cir. 1985). There is a well-established public interest in "enforcing patents that are likely valid and infringed." *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006); *see also Apple Inc. v. Samsung Electronics Co., Ltd.*, 735 F.3d 1352, 1372 (Fed. Cir. 2013) (recognizing a public interest in patent enforcement). "However, the public's interest in enforcing patent rights must also be weighed with other aspects of the public interest." *Id.* at 1372. The public also has an interest in legitimate competition and product choice. *See Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362–63 (Fed. Cir. 2008).

Patent law "must be interpreted in the light of the [C]onstitution and of its purpose declared by the Supreme Court, to reward individual and not group achievement." *Potts v. Coe*, 140 F.2d 470, 478 (D.C. Cir. 1944). Patents exist "to promote the progress of science and useful arts, by

securing for limited time to authors and inventors the exclusive rights to their respective writings and discoveries." U.S. CONST., Art. I, Sec. 8, cl. 8. "The public policy of promoting the progress of the useful arts is achieved by granting a limited monopoly to an inventor who fully discloses his invention to the public in a United States Patent," *Congoleum Industries, Inc. v. Armstrong Cork Co.*, 366 F. Supp. 220, 227 (E.D. Pa. 1973), and "the economic philosophy behind the Constitution[al provision] is the conviction (of our Founders) that encouragement of individual effort by personal gain, . . . is the best way to advance the public welfare," *Mazer v. Stein*, 347 U.S. 201, 219 (1954). "In order to effectuate that end, Congress granted valuable, enforceable rights to . . . [inventors] . . . without burdensome requirements." *Washingtonian Publishing Co. v. Pearson*, 306 U.S. 30, 36 (1939). Among these rights is the right to sue for infringement.

In short, while the public does have an interest in open competition, there is a strong public interest in enforcing patent rights. Patents would be of little value if Defendant Nos. 9, 13, 25-27, 33, and 87 could not be prevented from selling infringing products. To encourage innovation, inventors must be permitted to protect their invention from copycat infringers. Thus, the public interest weighs in favor of granting the preliminary injunction against Defendant Nos. 9, 13, 25-27, 33, and 87.[2]

---

[2] The parties addressed the amount of assets frozen as a result of the Court's TRO, raising concern that the amount frozen was disproportionate to amounts earned by Defendants relating to their sales of the allegedly infringing products. While the Court has the authority to restrain assets that have a close nexus with its exercise of equitable powers, *see Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), it cannot do so solely for the purpose of preserving assets upon which a plaintiff may execute in the future if it should prevail. Rather, the close nexus has to be intertwined with the specific exercise of equitable jurisdiction undertaken with respect to the claims at issue in the case. *See id.* The Court holds that the blanket asset freeze currently in place goes further than permitted and beyond the close nexus required. Therefore, the Court holds that all funds allegedly arising from the sale of the allegedly infringing products shall be frozen—but no more. The record strongly suggests that the amounts frozen significantly exceed permissible amounts relating to the allegedly infringing products but are insufficient at this point to allow the Court to state with reasonable precision the amounts that so relate. Accordingly, the

### B. Count II: False Marketing

At Count II of the complaint, LKRB alleges that Defendants violated 15 U.S.C. § 1125(a) (the Lanham Act) by marketing Defendants' products through unfair, deceptive, and fraudulent means through online marketplaces.  (ECF No. 3, p. 20).  Specifically, LKRB alleges that Defendants "made, and continue to make, false and/or misleading descriptions of fact and/or false and/or misleading representations of fact about the nature, characteristics, and/or qualities of Defendants' Products." (*Id.*).  LKRB alleges that Defendants' actions harm LKRB by:

> (1) depriving Plaintiff of its right to fairly compete for space within the various Online Marketplaces' search results and reducing the visibility of Plaintiff's LED strips in the various Online Marketplaces;
>
> (2) diluting and eroding the retail market price for [HGP] LED Strips;
>
> (3) causing overall degradation of the value of goodwill associated with Plaintiff's [HGP] LED Strips and any LED strips embodying the claims of the Asserted Patent generally; and
>
> (4) increasing Plaintiff's overall cost to market its goods and educate consumers about Plaintiff's [HGP] LED Strips.

(*Id.*).  For the foregoing reasons, the Court holds that LKRB did not demonstrate a reasonable likelihood of success on the merits of its false marketing claim.  The Court will deny LKRB's request for a preliminary injunction in relation to Count II.

### a. Reasonable Likelihood of Success on the Merits

15 U.S.C. § 1125(a) provides that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device,

---

Court will order the parties to meet and confer to address whether they can reach a stipulated amount to be frozen.  The frozen assets can be paid into either the local Court Registry or held in Defendants' counsels' IOLTA accounts pending the conclusion of this litigation.  To the extent the parties are unable to reach a stipulation as to the amount to be frozen within fourteen days, the Court will schedule an evidentiary hearing.

or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). To establish a Lanham Act claim based on a false or misleading representation of a product, a plaintiff must show:

(1) that the defendant has made false or misleading statements as to his own product [or another's];

(2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience;

(3) that the deception is material in that it is likely to influence purchasing decisions;

(4) that the advertised goods traveled in interstate commerce; and

(5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Johnson & Johnson–Merck Consumer Pharmaceuticals Co. v. Rhone–Poulenc Rorer Pharmaceuticals, Inc.*, 19 F.3d 125, 129 (3d Cir. 1994) (quoting *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 922–23 (3d Cir. 1990)).

LKRB alleges generally that Defendants engaged in false marketing by stating that Defendants' products "have an Ingress Protection rating, are suitable for 'outdoor use' or 'waterproof,' are of a certain length, have UL and FCC certifications, and/or have an LED count per meter . . . ." (ECF No. 3, p. 11). LKRB alleges that "some or all [of these statements] are

41

probably false when customers receive Defendants' Products." (*Id.*). LKRB further alleges that Defendants engaged in false marketing by (1) marketing LED light strips with safety issues including products that melt or catch on fire; (2) using misleading images which, in part, depict products that are not the products actually distributed to customers; (3) using false, artificial, compensated, misleading, or manipulated product reviews on online marketplaces; and (4) using false statements as to the origins of Defendants' products. (*Id.* at 11-12).

LKRB presented its false marketing count through Amazon online marketplace reviews. For example, LKRB provided the product review depicted to the right on Defendant No. 68's online marketplace to advance its false marketing claim against Defendant No. 68. The review states: "This strip can only be one solid color at a time. I hate how the advertisement shows multiple colors on the strip at a time which sometimes can be misleading. There is also no protective rubber in front of the LEDs and they are exposed. Definitely not waterproof." (ECF No. 122-2, p. 146).



A3MY6P0N0598NB (American Lamp Factory)

"This strip can only be one solid color at a time. I hate how the advertisement shows multiple colors on the strip at a time which sometimes can be misleading. There is also no protective rubber in front of the LEDs and they are exposed. Definitely not waterproof."

URL:
https://www.amazon.com/gp/customer-reviews/R1QNLXQ8W91K4P/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B0D1V8WG3K

Hash (SHA-256):
a1ddc56186e3bcc51331963b5ac0b207b5a44446fab40f2f8d5063ac9b7e6993

Capture date:
2024-11-13 18:20:46 PM GMT -07:00

LKRB cited the product review depicted to the right on Defendant No. 17's online marketplace to prove that Defendant No. 17 engaged in false marketing. That product review states: "Product is totally different than what is displayed in product listing." (ECF No. 122-4, p. 61).[3]



The Court acknowledges that the United States Court of Appeals for the Third Circuit has recognized that "[a]ffidavits and other hearsay materials are often received in preliminary injunction proceedings." *Kos Pharma*, 369 F.3d at 718. The Court may exercise its discretion in "weighing all attendant factors, including the need for expedition, to assess whether, and to what extent, affidavits or other hearsay materials are appropriate given the character and objectives of the injunctive proceeding." *Id.* at 719 (internal quotation marks and citations omitted). Accordingly, at the preliminary injunction stage, a court may rely on hearsay evidence that would not be admissible at trial.

Nevertheless, the Court holds that LKRB did not present evidence sufficient to prove a reasonable likelihood of success on the merits relative to its false marketing claim. The reviews presented at ECF No. 122-2 did not come in the form of a sworn affidavit, nor did customers testify regarding their experience with LKRB or Defendants' products. Instead, all of LKRB's evidence pertaining to false marketing stems from Amazon online marketplace reviews. It is unclear how Amazon online marketplace reviews could be presented at trial in an admissible format. Further, LKRB selected reviews that support its position – generally negative reviews – out of numerous

---

[3] This analysis presents merely a sample of the reviews LKRB submitted for the Court's consideration. According to LKRB, the exhibit located at ECF No. 122-2 shows "Screenshots of Defendants' products indicating false marketing." (ECF No. 122, p. 1). These exhibits make up the majority, if not all, of LKRB's evidence against Defendants as it pertains to false marketing.

product reviews on each Defendants' online marketplace (including positive reviews). While the Court does not blame LKRB for presenting reviews that support its position, the Court does not view cherry-picking negative reviews and presenting solely those reviews as a sufficient method of demonstrating a reasonable likelihood of success on the merits of a false marketing claim. While the Court may consider hearsay in determining whether to grant a preliminary injunction, in these specific circumstances, the Court holds that it would be improper to grant a preliminary injunction based *solely* on hearsay evidence. Given the evidence presented, the Court holds that LKRB did not meet its burden to show a reasonable likelihood of success on the merits of its false marketing claim. The Court will deny LKRB's request for a preliminary injunction based on Count II (false marketing) as to all Defendants that are the subject of this opinion.

## IV.    CONCLUSION

For the reasons explained above, the Court will grant the requested preliminary injunction as to Defendant Nos. 9, 13, 25-27, 33, and 87. The Court will deny the request for a preliminary injunction as to Defendant Nos. 10, 15, 23, 31, 34, 36, 39, 41, 45, 49, 63, 70, 76, 77, 84, 88, and 92-94.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

2/18/2025
Dated

44

# Schedule "A"

## Defendants with Business Name, Seller ID (ASIN), and Seller Name

| Defendant No. | Business Name | Seller ID | Seller Name |
|---|---|---|---|
| 9 | NINGBO GOLDY INTERNATIONAL TRADE CO.,LTD | A29D5JAUP1YACR | CZC AUTO |
| 13 | Hui zhou shi bai li ke ji you xian gong si | A2UKXWY1MRKB3E | Tatazone |
| 25 | Guang zhou A Min Ke Ji You Xian Gong Si | A1TF0WKG5BQMBR | EverBright Leds |
| 26 | guangzhoumingdengkejiyouxiangongsi | ACI00PK5CCTYI | Keiurot |
| 27 | JIAHUI CHEN | AL5EKZSUECD35 | Awinking |
| 33 | Shen zhen shi zhao lan guang dian ke ji you xian gong si | A1BEZVTKV42A98 | Joyland Electronics.,Ltd |
| 87 | LIN MENG DONG | A3FUWWY4CH41MZ | Decor4U |